Thomas Wilcox & another *vs.* Keziah S. Wilcox & others.

The interest of a deceased partner in the real estate of his firm, purchased with partnership funds, and held and used for partnership purposes, and not required for the payment of partnership debts or the adjustment of balances between the partners, is to be treated as realty, in the settlement of his estate.

A direction by a testator, in his will, to pay pecuniary legacies out of his personal estate and from the proceeds thereof, will not exonerate the real estate from the payment thereof, if the personal estate proves insufficient.

Wells, J.   By this bill the executors of the will of Philip Wilcox require the several parties interested under the will to interplead for the adjustment of their respective rights.

The testator gives to his wife, Keziah Wilcox, " as her dower, the same part and portion of my estate that she would by law receive as her dower, provided I had not made a will." He then gives several pecuniary legacies to his wife and children, and one to be held in trust for minor grandchildren. In regard to the last, he directs his executors " to sell, as soon as may be without sacrifice, sufficient of my personal estate to raise " the requisite

sum to be placed in the hands of the trustee named for the purpose. By a residuary clause he gives " all the rest and residue of the estate, both personal and real, that I shall possess or own at the time of my decease " to three sons equally. Directly after the residuary clause is the following : " All my debts and the legacies herein named, I direct and order my said executors to pay out of my personal estate and from the proceeds thereof."

In the view which the court take of the case, the distinction, somewhat relied on in the argument, between the legacies given by the codicil and those in the will, becomes unimportant.

The legacies exceeded the amount of the separate personal estate of the testator; but, including his interest in the firm of Wilcox & Richmond, of which firm he was an equal partner, there was more than sufficient personal property to pay all debts and legacies. After the decease of the testator, a large part of the personal effects of Wilcox & Richmond was destroyed by fire. This occurrence has caused a deficiency of personal property for payment of the legacies, although the personal effects of Wilcox & Richmond are still sufficient to pay all copartnership debts, and adjust the copartnership balances, " without disturbing the real estate belonging to said copartnership," as admitted by the answer of Richmond.

Two questions are presented for our decision : first, whether the real estate of the copartnership, purchased with partnership funds, and held and used for partnership purposes, is to be treated as personalty, in the settlement of the estate of the deceased copartner; second, if not, then whether the legacies are to abate for deficiency of personal assets, or to be paid by a sale of realty.

It is a familiar principle of equity that for payment of partnership debts, and the adjustment of balances between the copartners, such real estate of the firm shall be treated as personal assets, or stock in trade. Although the legal estate is that of tenants in common, the share of each partner descending to his heirs, yet equity will convert the legal title into a trust, and hold it devoted to the fulfilment of all copartnership obligations, before it can be taken as a part of the separate estate of the individual copartner. This equitable interference is exercised as

well against the widow claiming dower as against the heirs. To this extent all authorities agree. *Burnside* v. *Merrick*, 4 Met. 537. *Dyer* v. *Clark*, 5 Met. 562. *Howard* v. *Priest*, Ib. 582. These cases seem to decide that such is also the limit to this doctrine of equitable conversion.

But it is contended that the principle goes farther; that it is a law of equity jurisprudence, as applied to copartnerships, that each copartner has the right, for the settlement of the copartnership affairs, to have a decree for the sale of all the property of the firm, real as well as personal, in order that a proper division may be made; and, as a result of this liability to a judicial sale, that the widow and heirs acquire no beneficial interest in such real estate, but whatever is left for the share of each copartner goes to his personal representative. If so, it must be treated as personalty while remaining undivided. It must be admitted that there are many decisions, and more *dicta*, both in England and in this country, which appear to sustain this position; insomuch that Mr. Justice Story, in his work on Partnership, § 93, declares that the subject " must be considered as open to many distressing doubts." Upon examination of the earlier English cases, from which this doctrine has grown, it will be found that, in several of them, there was an express agreement between the copartners, the specific performance of which would of itself convert the real estate into personal assets. The conversion was worked, therefore, not merely from the relation of copartnership, but on the ground that the deceased partner had, by the very contract under which he became joint owner, stamped upon the realty the character and incidents of personalty. But in a more recent case, *Darby* v. *Darby*, 3 Drewry, 495, decided in 1856, the court held that the contract of copartnership itself was an agreement to hold all partnership realty subject to the equities of that relation, and liable to sale for the purposes of division and a settlement between the copartners; and, therefore, in equity, the heir could take no beneficial interest in such real estate. The court say, p. 506, if " a partnership purchase real estate for the partnership purposes, and with the partnership funds, it is, as between the real and personal representatives of the partners, personal estate."

But we are unable to see how the equities, which spring from the relation of copartnership, and are raised for the protection of the rights of the several copartners, *inter sese,* and of their joint creditors, can, by any principle of law or equity, be invoked by one class of the representatives of a deceased copartner against another class of representatives of the same copartner, each claiming the same interest and right. The legal estate passes to the heirs, with the incident of dower to the widow. Equity interferes for equitable purposes only. This right of each copartner to hold the real estate of the firm as security through him for the partnership debts, and to him for his advances and for the amount of his interest in the final results of the joint business, is often called an equitable lien. Now, when the joint debts are all paid, all balances between the several copartners fully adjusted, and there remains undivided real estate in which they are tenants in common, the legal title of each corresponding to his interest or share in the partnership, for what can one partner have any lien upon the share of the other in such real estate? For what purposes, and upon what grounds, can he appeal to a court of equity to decree its sale? Certainly in Massachusetts, where equitable jurisdiction is given only " where the parties have not a plain, adequate, and complete remedy at the common law," such an appeal must fail; *a fortiori,* would the executor or administrator fail of any right to come into equity for such a purpose? It is well said in *Greene* v. *Graham,* 5 Ohio, 264, " it is not for the respondent to avoid a partition by setting up a possible claim in the creditors of the copartners. We do not decide upon their claims, if they have any; but we leave them, if there are any, to assert their own rights."

We are satisfied to stand upon the decisions in 4 Met. & 5 Met., cited above, as the statement of the extent and the limit of this doctrine, in Massachusetts.

Upon the other question in this case, the authorities are abundant, and seem to us to be conclusive, that the pecuniary legacies, given by the will of Philip Wilcox, belong to the class termed " demonstrative," and were in no legal sense " specific." They carried no interest in any particular property or fund, but

were payable generally, like the debts, out of the personal estate and the proceeds thereof. This direction does not vary at all the usual and regular course of settlement of the estate, and there is nothing in the will that indicates an intention to give the personal estate specifically, or any portion of it, to these legatees. The fact that it was all equally subjected to the payment of debts, is a strong indication to the contrary. Courts do not incline to construe legacies to be specific, and will not do so unless such be the clear intention of the testator. *Kirby* v. *Potter,* 4 Ves. 748. *Attorney General* v. *Parkin,* Ambl. 566. *Briggs* v. *Hosford,* 22 Pick. 288. *Boardman* v. *Boardman,* 4 Allen, 179.

If a legacy be given, with reference to a particular fund only as pointing out a convenient mode of payment, it is to be construed as demonstrative, and the legatee will not be disappointed though the fund wholly fail. *Walls* v. *Stewart,* 16 Penn. State R. 275. *Chaworth* v. *Beech,* 4 Ves. 555. 2 Redfield on Wills, 462, 464, 472, 474. *Pierrepont* v. *Edwards,* 25 N. Y. 128. *Creed* v. *Creed,* 11 Clark & Fin. 491.

The devise of all the rest and residue of the testator's estate, both personal and real, is in no sense specific, and is not, therefore, exempt from the usual burden of residuary bequests, namely, payment of all debts and legacies. *Witman* v. *Norton,* 6 Binn. R. 395. *Blaney* v. *Blaney,* 1 Cush. 107.

The result of these conclusions must be therefore, that, *first,* The widow will take her dower in all the real estate of the testator, including his share of that which belonged to the firm of Wilcox & Richmond.

*Second.* The pecuniary legacies must be paid in full ; and so much thereof as shall not be paid from the remaining personal estate must be raised by sale of the real estate.

*Third.* Whatever shall remain will pass to those entitled under the residuary clause.

*Fourth.* The costs of all parties to these proceedings to be paid by the executors out of the estate.

*J. C. Stone,* ( *W. W. Crapo* with him,) for those defendants who contended that the interest of the testator in the real estate of his firm should be treated as personalty.

*R. C. Pitman, contra.*